UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT T. TURNER,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 20-cv-50-JPG
Criminal No 17-cr-40035-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Robert T. Turner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government has responded to Turner's motion (Doc. 7), and Turner has replied to that response and attempted to add new grounds for his § 2255 motion (Doc. 13). The Court also addresses Turner's motions for an evidentiary hearing (Docs. 8, 15, & 16), for leave to supplement his § 2255 motion (Doc. 14), and for appointment of counsel (Docs. 8 & 16).

**I.    Background**

On June 6, 2017, a federal grand jury indicted Turner on two counts of distribution of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a) and (b)(1)(C)—Count 1 on or about March 17, 2017, and Count 2 on or about April 5, 2017—and one count of possession with intent to distribute 50 grams or more of methamphetamine in the form of ice or 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a) and (b)(1)(A)—Count 3. As charged, the statutory range of imprisonment was no more than 20 years for Counts 1 and 2, 21 U.S.C. § 841(b)(1)(C), and 10 year to life for Count 3, 21 U.S.C. § 841(b)(1)(A).

An arrest warrant was issued the day of the indictment based on its return by the grand

jury, and a writ of *habeas corpus ad prosequendum* was issued the following day to obtain Turner's presence from the Lawrence County Jail at his June 21, 2017, initial appearance and arraignment. He was being held at the jail at that time on related state charges. The state and federal charges were based, in part, on evidence gathered in an April 6, 2017, search of Turner's home conducted pursuant to a warrant from a state court judge.

On September 7, 2017, the Government filed an information under 21 U.S.C. § 851 alleging one prior conviction for an Illinois felony drug offense—possession of a controlled substance. The information raised the statutory sentencing ranges of imprisonment to no more than 30 years for Counts 1 and 2, 21 U.S.C. § 841(b)(1)(C), and 20 year to life for Count 3, 21 U.S.C. § 841(b)(1)(A) (under the version effective at the time). On October 19, 2017, Turner pled guilty to all three counts without a plea agreement. Prior to accepting the plea, the Court conducted a plea colloquy that substantially complied with Federal Rule of Criminal Procedure 11.

The Court sentenced Turner on February 6, 2018. It found his relevant conduct to be 12,398.92 kilograms of marihuana equivalent, yielding a base offense level of 34 under U.S.S.C. § 2D1.1(c)(3). However, the Court further found Turner was a career offender based on two prior felony drug convictions, which established the applicable base offense level as 37 under U.S.S.G. § 4B1.1. The Court reduced his offense level by 3 points for timely acceptance of responsibility under U.S.S.G. § 3E1.1, yielding a total offense level of 34. Turner's criminal history category VI, established by his career offender status as well as his criminal history points, resulted in a guideline sentencing range of 262 to 327 months in prison. The Court sentenced him to serve 264 months in prison on each count, all to run concurrently.

Turner appealed his conviction to the United States Court of Appeals for the Seventh

Circuit. In that proceeding, he indicated he did not wish to withdraw his guilty plea. On November 14, 2018, the Court of Appeals dismissed the appeal after allowing counsel to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). *See United States v. Turner*, 742 F. App'x 145 (7th Cir. 2018). Turner did not seek a writ of *certiorari* from the Supreme Court.

**II.     § 2255 Motion**

In his timely § 2255 motion, Turner makes the following arguments:

Ground 1:    His trial level counsel, Assistant Federal Public Defender Judith Kuenneke, was constitutionally ineffective in violation of his Sixth Amendment rights because she failed:
a.    to seek suppression of evidence obtained in a search of Turner's home pursuant to a warrant that was obtained using evidence from a confidential source ("CS") who had entered Turner's home without his authorization, where the judge issuing the warrant was not informed of the CS's unauthorized entry, in violation of Turner's Fourth Amendment rights against unreasonable search;
b.    to seek suppression of evidence obtained about debit cards seized during that search where law enforcement did not have a warrant for a further search of the cards' activity;
c.    to challenge his arrest on a federal warrant where there was no affidavit in support of the warrant;

Ground 2:    Kuenneke was constitutionally ineffective in violation of his Sixth Amendment rights because she failed to seek dismissal of the indictment on the grounds that it was obtained using evidence acquired during the CS's unauthorized entry into Turner's home;

Ground 3:    Kuenneke was constitutionally ineffective in violation of his Sixth Amendment rights because she failed to seek dismissal of the indictment on the grounds that Turner's state initial appearance/probable cause hearing before a state judicial officer was excessively delayed; that state and federal officials colluded; that the delayed hearing resulted in a violation of the Fifth Amendment Double Jeopardy Clause and deprived this Court of jurisdiction over Turner's case; and that state authorities impermissibly destroyed relevant evidence;

Ground 4:    Turner's plea was not knowing, voluntary, and intelligent because he was on medication that rendered him incapable of making rational decisions

3

>>and judgments, all in violation of his Fifth Amendment due process rights; and
>
>Ground 5: Conviction and punishment on both Counts 1 and 2 violated the Fifth Amendment Double Jeopardy Clause because they involved the same facts, the same statute of offense, and the same investigation.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court found that it was plain from the motion and the record of the prior proceedings that the petitioner was not entitled to relief on Grounds 1.c, 4, and 5. It ordered further briefing on Grounds 1.a, 1.b, 2, and 3. Those arguments are now before the Court.

## III.  Analysis

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Turner's remaining challenges to his sentence rest on alleged instances of ineffective assistance of counsel. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the second prong of the *Strickland* test, the petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591.

Where a defendant pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann*, 397 U.S. at 771; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Lee v. United States*, 137 S. Ct. 1958,

1965 (2017); *Hill*, 474 U.S. at 59; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458.  Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea.  *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007).  To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough.  *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.").  "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Lee*, 137 S. Ct. at 1967.

The Court turns to the remaining grounds Turner offers for § 2255 relief:

    1.    <u>Grounds 1.a and 2:  Suppression/Dismissal Based on Search Warrant</u>

When a petitioner claims his counsel was ineffective for failing to file a motion, such as a motion to suppress or a motion to dismiss the indictment, the petitioner bears the burden of proving the motion would have had a reasonable chance of succeeding.  *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017); *Blake v. United States*, 723 F.3d 870, 885 (7th Cir. 2013).  "It is not ineffective assistance for counsel to not file a meritless motion."  *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990).  In Ground 1.a., Turner faults his counsel for failing to move to suppress evidence seized in the April 6, 2017, search.  In Ground 2, Turner argues competent counsel would have moved to dismiss the indictment because it was based on

the improper search.

As for the use of evidence seized in the April 6, 2017, search, the state judge issued the warrant on April 5, 2017, to search the house in which Turner lived[1] for things that had been used in the commission of methamphetamine offenses. The information used to obtain the warrant included information about two controlled buys by a confidential source ("CS"), one on March 17, 2017, and one on April 5, 2017. The day before the March 17 buy, Turner had invited the CS to come to his house at noon the following day to make the purchase. When the CS arrived on time at Turner's home and knocked on the door, Turner did not answer, so the CS walked in and found Turner sleeping in a bedroom. Turner then sold the CS methamphetamine. The transaction was recorded by the CS for law enforcement. There is no evidence Turner ever objected to the CS's presence in his home and or ever asked the CS to leave. The April 5 transaction, also occurring in Turner's home, was also recorded. On both occasions, the CS reported to law enforcement that Turner had a larger bag of methamphetamine from which he retrieved the drugs he sold to the CS.

The complaint for a search warrant that was presented to the state judge after the March 17 and April 5 transactions described both controlled buys but did not reveal that Turner had not opened the door to his home to allow the CS to enter during the March 17 buy. Turner claims that the CS was trespassing at the time of the buy and that, as a consequence, the information obtained from that buy could not be used to obtain a search warrant, and that the evidence seized pursuant to that warrant was subject to suppression.

---

[1] Turner makes much of the fact that the home actually belonged to his mother. However, the actual ownership of the house is not relevant for Fourth Amendment purposes where it is undisputed that Turner resided there.

Counsel was not deficient for failing to move to suppress the evidence or to dismiss the indictment based on the CS's entry into Turner's residence during the March 17 controlled buy. For a number of reasons, such a motion would not have succeeded. First, the circumstances indicate that, even if the CS entered Turner's home without his express permission at the moment of entry, Turner implicitly consented to the CS's presence in his home by issuing an invitation the day before and, on the day of the transaction, failing to object to the CS's entry or asking him to leave. Turner has pointed to no evidence leading to any other conclusion. Once the CS was lawfully within Turner's home by Turner's own grace, Turner had no legitimate expectation of privacy in anything he said to the CS, even though he said it in his own home. *See United States v. Thompson*, 811 F.3d 944, 949 (7th Cir. 2016). Consequently, use of the March 17 recording to obtain a search warrant or an indictment would not violate the Fourth Amendment.

Second, the complaint for the search warrant relied on both the March 17 and the April 5 controlled buys to establish probable cause, and information from the unchallenged April 5 buy was sufficient, by itself, to support the probable cause finding. There is probable cause for a search warrant where there is a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). If probable cause would have existed even had the complaint included the omitted material—that the CS entered Turner's home after Turner did not answer the door—the warrant was still properly supported. *See United States v. Santiago*, 905 F.3d 1013, 1025 (7th Cir. 2018). Here, even if the complaint for the warrant had revealed the circumstances of the CS's entry into Turner's home on March 17— or if the March 17 controlled buy had been omitted altogether—the April 5 controlled buy, by itself, would have supported probable cause to issue the warrant. Even one controlled buy

where the CS reported seeing a larger bag of methamphetamine the day before would provide a substantial basis to believe that a search would uncover evidence of illegal drug activities.

Finally, even had the complaint for the warrant not established probable cause, the evidence would not be subject to suppression because of the law enforcement officers' good faith in executing the facially valid search warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984). When an officer reasonably relies on a facially valid search warrant that is later declared invalid, the search is presumptively valid unless the defendant can show that the judge issuing the warrant wholly abandoned his judicial role as neutral arbitrator, the officers were dishonest or reckless in preparing the affidavit in support of the warrant, or that the warrant was so lacking in probable cause that reliance on it would be unreasonable. *Id.* at 923. Turner has alleged nothing to call into question the validity of the warrant except the asserted omission of the circumstances of the March 17 entry into Turner's home. As explained above, that omission was immaterial and would not invalidate the facially valid warrant or vitiate the officers' good faith reliance on it.

As for prejudice caused by counsel's failure to seek to suppress evidence seized in the April 6 search or its fruits or counsel's failure to seek dismissal of the indictment, for the reasons set forth above, Turner suffered no prejudice. Additionally, Turner has not pointed to any objective evidence that, had counsel made such motions—which were likely to be denied as discussed above—he would instead have chosen not to plead guilty and instead to go to trial. There was substantial evidence of his guilt, and pleading guilty in a timely manner secured a 3-point offense level reduction for acceptance of responsibility. Without that reduction, and with strong evidence of guilt, Turner would have faced a guideline sentencing range of 360 months to life in prison. Indeed, the objective evidence suggests it was beneficial to Turner to plead

guilty.

In sum, counsel was not deficient in, and Turner suffered no prejudice from, the failure to seek suppression of evidence or dismissal of the indictment based on the justification for the April 6, 2017, search of Turner's home.

### 2. Ground 1.b:   Suppression of Debit Card Evidence

In Ground 1.b., Turner asserts competent counsel would have moved to suppress digital information law enforcement obtained without a warrant or probable cause from debit cards seized from him during the April 6, 2017, search.   When law enforcement officers seized the debit cards, they ran the cards through a financial crimes system scanner without a warrant to determine whether the cards held any value.   Turner claims competent counsel should have known the further warrantless search violated the Fourth Amendment and was therefore subject to suppression.

Turner has not shown counsel's performance was deficient for failing to recognize a suppression issue and move to suppress the information obtained from the search for the value of the seized debit cards.   In June 2018, the Supreme Court held in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), that obtaining cell site location information from wireless carriers—that is, information from cell phone site towers about phones in the vicinity that connect to the particular "cell-site"—is a Fourth Amendment search and therefore subject to the warrant requirement.   *Id.* at 2217, 2221.   However, that case narrowly applied to collection of cell-site location date that yielded "a detailed log of a person's movements over several years."   *Id.* at 2222.   And it was decided *after* Turner was sentenced.

Here, the Government did not use Turner's debit cards to track his movements, the type of search at issue in *Carpenter*.   It simply assessed the value of an item found during a search,

just one small step beyond counting a stack of cash to determine its value. Turner has not pointed to any case law existing at the time of his prosecution that reasonable counsel could have used to seek suppression of the mere assessment of the value of his debit cards. Thus, he has not demonstrated counsel's performance was deficient.

More importantly, the Government contends that the value of the cards was not incriminating, or even relevant, to the charges against Turner in this case. There is no indication debit cards played any role in the transactions charged or in any related relevant conduct. They were not mentioned in the factual basis the Government provided at the plea hearing, in the presentence investigation report, or at the sentencing hearing. Thus, even had counsel moved to suppress and had the Court granted the motion, the circumstances leading to Turner's plea would not have changed. Any assertion now that he would not have pled guilty had counsel moved to suppress the search for the debit cards' value is simply unsupported by any objective evidence. Turner has therefore failed to demonstrate prejudice from counsel's performance.

3. Ground 3: Dismissal for Miscellaneous Reasons

In Ground 3, Turner faults his counsel for failing to seek dismissal of the indictment on a variety of grounds that involve events in state court:

- Delay in initial appearance/probable cause hearing before state judicial officer;
- Collusion of state and federal officials;
- Double Jeopardy Clause violation from delay in proceedings; and
- Destruction of evidence by state authorities.

A recap of the events preceding Turner's federal case will help sort out his current arguments. As noted above, when this case began with the June 6, 2017, indictment, Turner was already detained on state charges for possession with intent to distribute methamphetamine.

He was arrested on the state charges on April 6, 2017, the day his home was searched, and detained in the Lawrence County Jail. Apparently he did not appear before a state judicial officer until April 19, 2017, far longer than the standard 48-hour period thought to satisfy constitutional standards. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)). The State of Illinois dismissed the state charges against Turner in February 2018, after he had been indicted in this federal case.

In his federal prosecution, Turner was indicted and an arrest warrant based on the indictment was issued on June 6, 2017. Turner remained in state custody until he was arrested on the federal warrant and brought before a federal judicial officer on a writ of habeas corpus ad prosequendum on June 21, 2017, and was then remanded to the custody of the United States Marshal.

Turner's counsel in this federal case did not challenge the extended delay between Turner's state arrest and initial appearance, and did not object that Turner did not receive credit for the time he served in state custody. However, this was not deficient performance. Inordinate delay in a probable cause hearing in state proceedings or unlawful detention during that delay does not affect the validity of independent federal proceedings, even if the two proceedings are based on the same conduct. The relevant factors for this federal case involve only the federal proceedings, for which Turner asserts no error not already addressed by the Court.

To the extent Turner alleges improper collusion between state and federal authorities to delay a probable cause hearing after his arrest on state charges, Turner has pointed to nothing more than speculation that federal officers were responsible for the state court delay. And to the extent Turner asserts collusion resulting in the destruction of evidence, he does not specify what

evidence was destroyed or how its destruction rendered his federal conviction unfair. To the extent Turner is referring to the destruction of evidence seized in the search and deemed to be contraband, if state officials destroyed that evidence, it was pursuant to a state court order in January 2019, after Turner's conviction in this case and the dismissal of his appeal. To the extent state officials maintain other non-contraband items seized in the April 6, 2017, search, there is no indication federal officers played any role in keeping that property from Turner. Indeed, Turner has asked the Government for it numerous times in his criminal case pursuant to Federal Rule of Criminal Procedure 41(g), and the Government has consistently responded that it does not have the property in its possession.

More importantly though, Turner does not explain how, had counsel objected to his extended state detention—not relevant to these federal proceedings—or objected to the post-conviction destruction of contraband evidence pursuant to a court order, there was a reasonable probability that the results of the proceeding would have been different—that is, that he would not have chosen to plead guilty. Objective evidence of prejudice is simply absent.

For the foregoing reasons, none of the alleged instances of ineffective assistance of counsel that Turner raises in his original § 2255 motion warrant relief.

## IV. Motion for Leave to Amend

Turner raises a number of alleged instances of ineffective assistance of counsel for the first time in his reply brief. Specifically, he asserts that counsel was constitutionally ineffective because she had no trial strategy, failed to conduct a full investigation before advising him to plead guilty, failed to challenge the credibility of law enforcement officers executing the search warrant including overlooking that they committed theft during the search, failed to seek to suppress the fruits of the search, failed to review the search warrant, and failed to object to his

warrantless arrest in his mother's home. To the extent these are new arguments not raised in the original § 2255 motion, the Court construes the reply brief as a motion for leave to amend (Doc. 13) Turner's original motion.

A motion for leave to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15. *Vitrano v. United States*, 721 F.3d 802, 806 (7th Cir. 2013). Under Rule 15, a party may amend its pleading once as a matter of course within 21 days of serving it or within 21 days after service of a response or a motion to dismiss, for a more definite statement or to strike. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its pleading only with the opposing parties' written consent, which Turner has not obtained, or leave of court, which the Court should freely give when justice requires. Fed. R. Civ. P. 15(a)(2). The Court has wide discretion in deciding whether to grant a petitioner leave to amend a § 2255 motion. *Vitrano*, 721 F.3d at 806. Generally, a court should allow amendment of a pleading except where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)); *Vitrano*, 721 F.3d at 806.

Turner's proposed amendments come too late. The Court views Turner's proposed amendment with the background understanding that, generally, arguments or legal theories not included in an original § 2255 motion and raised for the first time in a reply brief are deemed waived. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). This rule holds true even if the movant is proceeding *pro se*. *Id.*; *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992). This is because the opposing party does not have an opportunity to respond to the new arguments

in the reply brief. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998). Turner vaguely asserts new instances of ineffective assistance of counsel that he did not support, explain, or even allege in his original motion. Thus, he has waived those new arguments.

In addition, allowing Turner to amend his § 2255 motion now to add new arguments would unduly delay the resolution of this case. The nature of Turner's new arguments reveals that they were available to Turner when he filed his original § 2255 motion, and he has not offered any legitimate reason for failing to raise them then. Allowing them now would simply delay the conclusion of this case and give Turner more time to attempt to articulate new arguments he could have and should have raised the first time around, all in aid of attempting to sidestep the requirement for permission from the Court of Appeals to file a second § 2255 motion.

Finally, and most importantly, Turner's new arguments would be futile. Even if the Court were to give Turner some leeway in the spirit of liberal construction of *pro se* filings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), he has not pointed to any objective evidence that, had counsel performed differently in some concrete way, there is a reasonable probability that he would not have pled guilty. There was substantial evidence of his guilt, including audio and video recordings of two controlled buys and evidence obtained during the April 6, 2017, search. By pleading guilty and receiving credit for acceptance of responsibility, Turner was able to lower his guideline sentencing range from a 360-month to life range to a 262- to 327-month range, where he was ultimately sentenced to the low end of that range. He confirmed under oath at his plea hearing that he was fully satisfied with his counsel's representation and advice, and his current *post hoc* assertions that he would not have pled guilty had counsel somehow performed differently are simply not the kind of objective evidence necessary to support a finding of

prejudice from counsel's performance. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996). Any § 2255 argument based on Turner's new assertions would be futile.

For these reasons, the Court will deny the implied motion for leave to amend contained in Turner's reply brief (Doc. 13).

## V. Motion for Leave to Supplement (Doc. 14)

In April 2021, while this § 2255 motion was pending, Turner filed another habeas petition under 28 U.S.C. § 2241 in the district of his confinement, the Northern District of West Virginia. *See Turner v. Wolfe*, No. 1:21-CV-46. That court construed the petition as a § 2255 motion and transferred it to this district, the district of Turner's conviction. After some initial shuffling around, the filing was docketed in this case as a motion for leave to supplement his original § 2255 motion to add new arguments (Doc. 14). The Court applies the same standards set forth above with respect to amendment of pleadings.

Turner seeks to add to his § 2255 motion a new ground for relief based on *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1239 (2021). In *Ruth* the Seventh Circuit Court of Appeals applied the categorical approach to determine whether a state criminal statute—720 ILCS 570/401(c)(2)—swept more broadly than the federal definition of "felony drug offense," a type of prior conviction that can support enhanced penalties under § 841(b). *Id.* at 646. Under the categorical approach, the Court looks only at the statutory definition of the prior offense, not the actual facts that led to the conviction, to see if it qualifies to increase a sentence. *Shular v. United States*, 140 S. Ct. 779, 783 (2020); *see Taylor v. United States*, 495 U.S. 575 (1990). If the state statute sweeps more broadly than the federal definition of "felony drug offense," it cannot justify the increased punishment range. *Ruth*, 966 F.3d at 646.

In *Ruth*, the Court of Appeals compared 720 ILCS 570/401(c)(2), which made it unlawful to possess with intent to deliver "1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof," to see if that conduct necessarily fell into the federal definition of a "felony drug offense"—"an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances," 21 U.S.C. § 802(44). *Ruth*, 966 F3d at 647. The Court of Appeals noted that Illinois defines "cocaine" to include "optical, positional, and geometric isomers" of coco leaves, 720 ILCS 570/206(b)(4), whereas the federal definition includes only "optical and geometric isomers," 21 U.S.C. § 812 (Schedule II(a)(4)). *Ruth*, 966 F.3d at 647. Consequently, a defendant could be convicted under state law (say, for delivery of positional isomers), but that conviction would not necessarily qualify under federal law as a "felony drug offense" (which does not include crimes involving positional isomers). *See id.* Therefore, the Court of Appeals concluded that 720 ILCS 570/401(c)(2) was categorically broader than conduct within the federal definition of "felony drug offense," *id.* at 647-48, and could not trigger an enhanced sentence under § 841(b)(1)(C), *id.* at 650. *See, e.g., United States v. Garcia*, 948 F.3d 789, 793 (7th Cir.) (finding Indiana criminal statute broader than federal "felony drug offense" because it covered substance that federal definition did not), *cert. denied sub nom. Pineda-Hernandez v. United States*, 141 S. Ct. 334 (2020); *United States v. De La Torre*, 940 F.3d 938, 949 (7th Cir. 2019); *United States v. Elder*, 900 F.3d 491, 501 (7th Cir. 2018) (finding Arizona criminal statute prohibiting possession of equipment for manufacturing "dangerous drugs" covered drugs that federal definition did not).

In his motion for leave to supplement his § 2255 motion, Turner asserts that in light of

*Ruth* his prior Illinois conviction for possession of a controlled substance could not support career offender status because the state offense is categorically broader than a "controlled substance offense" as defined by U.S.S.G. § 4B1.2(b) (2016).  Turner fails to grasp, however, that *Ruth* distinguished prior convictions supporting *career offender status* from those supporting *enhancement of a statutory sentencing range*.  While *Ruth* held that a prior Illinois conviction did not support a statutory sentencing range enhancement under 21 U.S.C. § 841(b) as a "felony drug offense," *id*. at 647-48, it also held that it could support career offender status based on a "controlled substance offense" found in U.S.S.G. § 4B1.2(b) of the sentencing guidelines, *id.* at 561-62.  The type of conviction necessary to support career offender status under the guidelines is broader than the type of conviction needed to support a statutory enhancement, so there is no problem with using it to support career offender status.  *See id.* at 654.

A related argument not specifically articulated by Turner but too close to it to be ignored is *Ruth*'s impact on his statutory sentencing range under 21 U.S.C. §§ 841(b)(1)(A) and 851.  Under the approach of *Ruth* (which, as noted above, addressed prior state cocaine offenses), it is conceivable that Turner's prior Illinois methamphetamine conviction would be subject to a similar technical argument and would therefore not qualify as a "felony drug offense" able to raise his statutory range on Count 3 from a range of 10 years to life in prison to a range of 20 years to life in prison.

Indeed, in *Ruth* the enhanced statutory range under § 841(b)(1)(C) raised the statutory maximum sentence from 20 to 30 years, thus raising his career offender base offense level under U.S.S.G. § 4B1.1(b) from 32 to 34.  It is true that the Court found no problem with his career offender status.  However, because invalidating the statutory enhancement would have resulted in a different base offense level and a different guideline sentencing range, the Court remanded

the case for resentencing as a career offender using the *unenhanced* statutory range to determine the career offender base offense level.  *Ruth*, at 966 F.3d at 654.

Turner's case, however, is different.   Whether the statutory range was enhanced would have had no impact on his guideline offense level because, enhanced or unenhanced, his statutory maximum sentence for Count 3 would have been life under § 841(b)(1)(A), establishing a base offense level of 37.   If he had not received the enhancement, his guideline range would not have changed.   Thus, Turner cannot show prejudice flowing from *Ruth*'s rule of law or from his counsel's failure to argue a *Ruth*-like argument before *Ruth* was actually decided.

Because allowing supplementation of Turner's original § 2255 with a *Ruth*-based argument would be futile, the Court will deny his motion for leave to supplement (Doc. 14).

## VI.     Hearing and Counsel

The Court finds that there is no need for a hearing on the pending matters in this case because the motions, files, and other records of the case demonstrate that Turner is not entitled to relief under § 2255.   28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).   Additionally, the Court finds that Turner had competently represented himself throughout this case and that the presence of counsel would not have made a difference in the outcome of the case.   For these reasons, the Court will deny Turner's motions for an evidentiary hearing (Docs. 8, 15, & 16) and for appointment of counsel (Docs. 8 & 16).

## VII.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.

A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001). To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).

The Court finds that Turner has not made such a showing and, accordingly, declines to issue a certificate of appealability.

### VIII. Conclusion

For the foregoing reasons and those set forth in the Court's June 21, 2021, order (Doc. 3), the Court:

- **DENIES** Turner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1);

- **DENIES** Turner's implicit motion for leave to amend his § 2255 petition contained in his reply brief (Doc. 13);

- **DENIES** Turner's motion for leave to supplement his § 2255 motion (Doc. 14);

- **DENIES** Turner's motions for an evidentiary hearing (Docs. 8, 15, & 16) and for appointment of counsel (Docs. 8 & 16); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: June 7, 2022**

            s/ J. Phil Gilbert
            **J. PHIL GILBERT**
            **DISTRICT JUDGE**